UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                    :

NELSON GONZALEZ,           :

               Plaintiff,    :

   – against –          :   08 Civ. 4467 (VM)

THE ULANOV PARTNERSHIP, INC.  :
and NICHOLAS ULANOV,      :

             Defendants.  :
-------------------------------------------------------X

## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1

Pursuant to Southern District of New York Local Civil Rule 56.1, defendants The Ulanov Partnership Inc. (the "Company") and Nicholas A. Ulanov ("Ulanov") respectfully submit the following statement of material facts as to which they contend there is no genuine issue to be tried.

## THE COMPLAINT

1.     The complaint in this Action ("Compl.") was filed on May 13, 2008 and is attached as **Exhibit A**.

2.     The First Cause of Action for breach of contract is based on defendants' alleged failure to pay plaintiff wages and bonuses, as well as defendants' alleged failure to reimburse plaintiff for expenses.  (Compl. ¶¶ 1, 33-35.)

3.     The Second Cause of Action is brought under the New York State Labor Law for defendants' alleged failure to pay plaintiff wages and bonuses.  (Compl. ¶¶ 1, 37-41.)

632844.1

4.       The Third Cause of Action is brought in quantum meruit for defendants' alleged failure to compensate plaintiff for work performed in 2005 and 2006, and defendants' alleged failure to reimburse plaintiff for expenses incurred.  (Compl. ¶¶ 1, 42-46.)

5.       The Complaint predicates Ulanov's liability solely on the alleged propriety of piercing the Company's corporate veil.  (Compl. ¶ 9.)

**THE COMPANY**

6.       The Company provides consulting services to not-for-profit institutions. (Ulanov Decl. ¶ 3.)[1]

7.       Ulanov is the Chief Executive Officer and Managing Director of the Company.  (Ulanov Decl. ¶ 2.)

8.       The Company has always been a relatively small operation, at any point in time employing no more than four or five individuals. (Ulanov Decl. ¶ 3.)

9.       At present, the only employees of the Company are Ulanov and his assistant.  (Ulanov Decl. ¶ 3.)

10.       The Company works with just a few clients at any given time, and payments from clients come in at irregular intervals, most significantly after the Company has performed all of the work on a given project.  (Ulanov Decl. ¶ 4.)

11.       The Company's revenues go through peaks and valleys, which has caused the Company sometimes to defer compensation.  (Ulanov Decl. ¶ 4.)

12.       Plaintiff commenced employment with the Company on a full-time basis in 1997. (Compl. ¶ 16.)

---

[1] Citations to "Ulanov Decl." are to the accompanying declaration of Nicholas A. Ulanov, dated July 25, 2008.  Citation to "Ulanov Decl. Ex. __" are to the exhibits attached to the Ulanov declaration.

## BONUSES

13.    The Company's bonus policy has always been that the issuance and amount of a bonus is purely discretionary, based on Ulanov's determination that an employee's performance demonstrated that he was likely to make continued, valuable contributions to the Company.  (Ulanov Decl. ¶ 6.)

14.    It has always been the Company's policy that, even once a bonus has been awarded, payment is conditioned on: (a) the Company's financial ability to pay the bonus; and (b) the recipient's continued employment with the Company. (Ulanov Decl. ¶ 6.)

15.    When plaintiff was first hired, Ulanov explained the Company's bonus policies to him.  (Ulanov Decl. ¶ 6.)

16.    Pursuant to the exercise of the Company's discretion, plaintiff received no bonus in 1997, 1998, 1999, 2000, 2003, 2004, 2005 and 2006.  (Ulanov Decl. ¶ 7.)

17.    On May 31, 2001, the Company awarded plaintiff a $20,000 bonus (the "2001 Bonus").  (Ulanov Decl. ¶ 7.)  (Ulanov Decl. Exs. 1.)

18.    On April 9, 2002, the Company awarded plaintiff a $12,500 bonus (the "2002 Bonus").  (Ulanov Decl. ¶ 8.)  (Ulanov Decl. Exs. 1, 2.)

19.    The 2001 Bonus and the 2002 Bonus were discretionary, and at the time they were awarded Ulanov reminded plaintiff of the conditions that would govern their potential payment. (Ulanov Decl. ¶¶ 7, 8.)

20.    The Company made bonus payments to plaintiff of $5,000 on July 25, 2001, $5,000 on August 20, 2001, $5,000 on May 2, 2002, and $1,800 on December 31, 2003. (Ulanov Decl. ¶ 9.) (Ulanov Decl. Exs. 4, 5, 6, 7.)

**PLAINTIFF'S PURSUIT OF A Ph.D. ABROAD**

21.     Plaintiff worked full-time for the Company until January 2003, when he began working under what he describes as a "part-time arrangement." (Compl. ¶¶ 20, 22.)

22.     During this "part-time arrangement," pursuant to an agreement with the Company, plaintiff pursued a Ph.D. through the London School of Economic and Political Science while he was a Fellow at Catholic University Leuven, Belgium. (Ulanov Decl. ¶ 10, 13.) (Ulanov Decl. Ex. 8.)

23.     The agreement between the Company and plaintiff provided that plaintiff would be abroad pursuing his Ph.D. for a period of no less than six months and no longer than one year; during that time plaintiff would make himself available for part-time work for the Company equivalent to one day per week; after that period, plaintiff would return and work for the Company for at least 15 months; and plaintiff would give the Company at least 6 months notice should he decide to resign. (Ulanov Decl. ¶¶ 11, 12.) (Ulanov Decl. Ex. 8.)

24.     Plaintiff set forth this agreement in an e-mail to Ulanov, dated August 31, 2002 that stated:

> Dear Nicholas:
>
> I am extremely glad we were able to resolve the issue of my affiliation with the Firm during and after my time in Belgium, and I am grateful for your flexibility and generosity in allowing our conversation to come to a point of agreement.
>
> To summarize, I understand that I will remain a member of the Firm for the time I am away on my academic Fellowship (from around December 2002, for a minimum of six months and for up to a year), and I will be available to contribute to its work (presumably mainly the development of the RiWSA) for the equivalent of a day per week. I also understand that I will remain with the Firm for a minimum of 15 months after my return, and that should I decide not to continue with the Firm, I will give six months notice.

I am looking forward to continuing my involvement with our work
while I am away and more fully upon my return, when I hope a
(presumed) doctoral qualification will actually be of some use to
us!

Regards and thanks,

Nelson

(Ulanov Decl. ¶ 12.) (Ulanov Decl. Ex. 8.)

25.    In January 2003, because his status as a Company employee had ended,
plaintiff was paid for accrued but unused vacation and holiday pay.  (Ulanov Decl. ¶ 14) (Ulanov
Decl. Exs. 9, 10.)

26.    During his stay in Belgium, the Company asked plaintiff to devote his
promised part-time work to the development of the Royal Institution World Science Assembly,
also known as "RiWSA" or "RiSci" ("RiSci"), a joint project of the Company and the Royal
Institution of Great Britain. (Ulanov Decl. ¶ 15.)

27.    The board of RiSci, which was governed by the Royal Institution of Great
Britain, gave plaintiff the title of director.  (Ulanov Decl. ¶ 16.)

28.    Plaintiff received a payment in the amount of $25,000 from RiSci.
(Ulanov Decl. ¶ 16.)(Ulanov Decl. Ex. 11.)

29.    While he was on leave, plaintiff acknowledged his status as an
independent contractor. (Ulanov Decl. ¶ 16.) (Ulanov Decl. Ex. 12.)

30.    While he was on leave, plaintiff's working hours were not set by the
Company, he was not on the Company's payroll, and he did not receive any fringe benefits from
the Company.  (Ulanov Decl. ¶ 16.)

31.    While he was on leave, the Company did not micro-manage plaintiff's work, and plaintiff pursued RiSci's development largely on his own initiative. (Ulanov Decl. ¶ 16.)

32.    Plaintiff did not finish his studies within the agreed-to period of one year. (Ulanov Decl. ¶ 17.)

33.    He made several requests to extend his stay abroad, in which the Company acquiesced. (Ulanov Decl. ¶ 17.)

34.    Plaintiff did not obtain his Ph.D. (Ulanov Decl. ¶ 18.)

35.    In mid-November 2005, plaintiff returned to the United States and resumed working on a full-time basis for the Company, with an agreed upon annual salary of $150,000. (Compl. ¶ 25.) (Ulanov Decl. ¶ 18.)

36.    On or before October 15, 2006, plaintiff left his employment with the Company, without providing six months notice. (Ulanov Decl. ¶ 20.)

## TAX RECORDS

37.    For plaintiff's work for the Company in respect of 1997 through December 2002, the Company recorded plaintiff's compensation on an IRS Form W-2. (Ulanov Decl. ¶ 25.) (Ulanov Decl. Ex. 18.)

38.    In 2003, the Company reported compensation to plaintiff on both an IRS Form W-2 and an IRS Form 1099. (Ulanov Decl. ¶ 26.) (Ulanov Decl. Ex. 13, 18.)

39.    Plaintiff's 2003 IRS Form W-2 recorded $10,558.06, representing his salary for the pay period November 15, 2002 through December 18, 2002, as well as a payment made to him on January 21, 2003 representing the balance of his unused vacation pay and holiday pay. (Ulanov Decl. ¶ 26.) (Ulanov Decl. Exs. 9, 10, 18.)

40.    Plaintiff's 2003 IRS Form 1099 recorded the "nonemployee compensation" he received for the part-time work he performed while pursuing his Ph.D. (Ulanov Decl. ¶ 26.) (Ulanov Decl. Ex. 13.)

41.    In 2004, the Company provided plaintiff only with an IRS Form 1099, which recorded his "nonemployee compensation." (Ulanov Decl. ¶ 27.) (Ulanov Decl. Ex. 13.)

42.    In 2005, the Company recorded the compensation it provided to plaintiff on an IRS Form 1099, for the "nonemployee compensation" he received for the part-time work he performed while pursuing his Ph.D., and an IRS Form W-2 form for the compensation he received as a full-time employee beginning in mid-November 2005. (Ulanov Decl. ¶ 28.) (Ulanov Decl. Ex. 13, 18.)

43.    In 2006, the Company reported all of plaintiff's compensation on an IRS Form W-2. (Ulanov Decl. ¶ 29.) (Ulanov Decl. Ex. 18.)

**EXPENSE REIMBURSEMENT**

44.    It is the Company's policy that employees' requests for reimbursement of business expenses must be supported with explanatory detail and, if requested, backup documentation such as receipts. (Ulanov Decl. ¶ 31.)

45.    Plaintiff understood and generally complied with this policy. (Ulanov Decl. ¶ 32.) In his expense reimbursement requests for January and February 2006, plaintiff separately identified every single individual item for which he was seeking reimbursement, its amount, date, nature, and the place where the expense was incurred. (Ulanov Decl. ¶ 32.) (Ulanov Decl. Ex. 20.)

46.    On September 15, 2006, plaintiff submitted an expense reimbursement request for the period April to July 2006, totaling $20,774.68.  (Ulanov Decl. ¶ 33.) (Ulanov Decl. Ex. 21.)  It stated in pertinent part as follows:

**Apr-06**
| | |
|---|---|
| UP | $869.16 |
| WST | $4,422.19 |

**May-06**
| | |
|---|---|
| UP | $707.16 |
| WST | $4,045.38 |

**Jun-06**
| | |
|---|---|
| UP | $761.03 |
| WST | $4,592.91 |

**Jul-06**
| | |
|---|---|
| UP | $789.97 |
| WST | $4,486.88 |

**$20,774.68**

(Ulanov Decl. ¶ 33.) (Ulanov Decl. Ex. 21.)

47.    On July 29, 2007, nine months after he resigned, plaintiff submitted an updated expense reimbursement request to the Company totaling $25,951.02. (Ulanov Decl. ¶ 34.) (Ulanov Decl. Ex. 22.)  In it, plaintiff increased (without explanation) the amount he previously had requested for the period April to July 2006 by $586.54 (from an original $20,774.68 to a revised $21,361.22), and requested reimbursement for the period August to October 2006 of $4,589.80.  (Ulanov Decl. ¶ 34.) (Ulanov Decl. Ex. 22.)  It stated in pertinent part as follows:

**Apr-06**
UP       $869.16
WST      $4,422.19

**May-06**
UP       $707.16
WST      $4,045.38

**Jun-06**
UP       $761.03
WST      $4,692.91

**Jul-06**
UP       $789.97
WST      $5,073.42

**Aug-06**
UP       $275.06
WST      $730.47

**Sep-06**
UP       $307.04
WST      $1,782.66

**Oct-06**
UP       $374.80
WST      $1,119.77

**$25,951.02**

(Ulanov Decl. ¶ 34.) (Ulanov Decl. Ex. 22.)

48.    The Company has asked plaintiff to provide details explaining and backup documenting the expenses for which he is seeking reimbursement.  (Ulanov Decl. ¶ 35.) Plaintiff has not complied with such requests.  (Ulanov Decl. ¶ 35.)

**SALARY**

49.    Plaintiff was paid all salary owed to him during his time as a full-time employee beginning in November 2005 through to his resignation, except arguably $7,217.20 constituting his salary for the period December 16, 2005 through January 15, 2006. (Ulanov Decl. ¶ 30.) (Ulanov Decl. Ex. 19.)

50.    Attached as Exhibit 19 to the Ulanov Declaration are the plaintiff's paystubs for the period beginning November 16, 2005 through October 15, 2006, which show that plaintiff was paid all salary owed for the period November 16, 2005 through his last date of employment, except for salary in respect of December 16, 2005 through January 15, 2006.

Dated:    New York, New York
          July 25, 2008

                        Respectfully submitted,

                        FRIEDMAN KAPLAN
                          SEILER & ADELMAN LLP

                        /s/  Lance J. Gotko
                        Lance J. Gotko
                        lgotko@fklaw.com
                        1633 Broadway
                        New York, New York 10019-6708
                        (212) 833-1100

                        *Attorneys for Defendants*
                        *Nicholas A. Ulanov and The Ulanov Partnership Inc.*

632844.1                        10

# EXHIBIT A



'08 CIV 4467

Lee Bantle (LB-7036)
BANTLE & LEVY LLP
817 Broadway
New York, New York 10003
(212) 228-9666
Attorneys for Plaintiff



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                    :
NELSON GONZALEZ,                                    :
                              Plaintiff,            :
                                                    :     COMPLAINT
       -against-                                    :
                                                    :
THE ULANOV PARTNERSHIP, INC.,                       :
and NICHOLAS ULANOV,                                :     PLAINTIFF DEMANDS
                                                    :     TRIAL BY JURY
                                                    :
                              Defendants.           :
                                                    :
------------------------------------------------------x

       Plaintiff, by his attorneys, Bantle & Levy LLP, as and for his complaint against

defendants, alleges as follows:

### NATURE OF THE ACTION

       1.      This is an action for breach of contract, for violations of New York State Labor

Law §190, et. seq. and for quantum meruit arising from defendants' wilful failure to pay wages

and bonuses due and owing to plaintiff and to reimburse plaintiff for business expenses he

incurred in the course of his employment.


### JURISDICTION AND VENUE

       2.      The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332

because the matter in controversy exceeds a value of $75,000 and because the plaintiff and

defendants are citizens of different states.

3.      The matter in controversy herein exceeds the sum of $75,000, exclusive of interests and costs.  Plaintiff is owed at least $43,202.44 in unpaid wages and bonuses.  Pursuant to New York State Labor Law §198, he is entitled to $10,800.61 in liquidated damages for wilful nonpayment, totaling $54,003.05.  Plaintiff is owed another $23,093.41 in business expenses which remain unreimbursed by defendants.   Plaintiff also claims legal fees, expected to be in excess of $15,000, pursuant to New York State Labor Law §198.  Plaintiff's accumulated claim is at least $92,096.46.

4.      A substantial part of the events giving rise to the claims occurred within the district of the United States District Court, Southern District of New York, and venue is properly lodged in this Court pursuant to 28 U.S.C. §1391(b).  While employed full-time by defendants, plaintiff worked primarily in New York County.  A substantial portion of the services for which plaintiff remains unpaid were performed in New York County.

<u>PARTIES</u>

5.      Plaintiff Nelson Gonzalez resides at 1850 Gough Street, Apt. 504, San Francisco, CA, 94109.

6.      Upon information and belief, defendant The Ulanov Partnership, Inc. ("UP"), is a foreign corporation formed and existing under the laws of the State of Delaware, with its principal place of business at 210 Harrison Street, Princeton, New Jersey, 08540.

7.      Upon information and belief, defendant Nicholas Ulanov ("Ulanov") is the owner of UP, and resides at 210 Harrison Street, Princeton, New Jersey, 08540.

8.      UP is a small strategy consulting firm that advises non-profit, public sector and philanthropic institutions.

9.    Ulanov exercised such control over UP that UP was a mere instrumentality of Ulanov thus allowing the corporate veil to be pierced.

10.    Ulanov exercised sole control over the decision-making of UP.

11.    Upon information and belief, UP had no board of directors and did not hold board meetings.

12.    UP was grossly undercapitalized.

13.    Upon information and belief, transfers of capital in and out of UP's bank account were often dictated by Ulanov's personal needs.

14.    The U.S. headquarters of UP is in Ulanov's New Jersey residence.

15.    Upon information and belief, Ulanov used UP employees to pursue personal projects which had nothing to do with the firm or its business.

## STATEMENT OF FACTS

16.    In 1997, plaintiff commenced employment with UP as a full time W-2 employee. His title was consultant.  He continued his employment with UP on either a full-time or part-time basis until his voluntary resignation in October 2006.

17.    Ulanov acting in his capacity as owner of UP promised to pay plaintiff an annual salary and held out the possibility of performance bonuses.

18.    Throughout his tenure, plaintiff fully performed his duties, executed high level projects, and brought in more than $800,000 worth of business to UP.

19.    In June of 2000, Ulanov awarded plaintiff a $20,000 performance bonus.  Of this amount, $5000 remains unpaid to date.

20.    Beginning in January, 2003, plaintiff began working part-time for UP in order to leave him time to pursue a graduate degree.

21.     Ulanov and plaintiff agreed that Plaintiff would work one day a week while pursuing his degree and that he would be compensated in the amount of 25% of his original salary.

22.     Plaintiff worked under this part-time arrangement from January 2003 to November 2005, although in actuality, plaintiff worked about 75% of his normal full-time hours during this period.

23.     In June of 2003, Plaintiff was awarded a $12,500 performance bonus. Of this amount, $10,700 remains unpaid.

24.     Despite providing valuable services to defendants, Plaintiff was not paid his salary for the last four months of his part-time tenure in an amount totaling $12,500.00.

25.     In November 2005, plaintiff resumed working full-time at UP at an agreed upon annual salary of $150,000.

26.     Following plaintiff's return to full-time work , UP failed to pay him salary in the amount of $15,002.44.

27.     In October, 2006, due to UP's failure to pay him salary and bonuses which were due and owing and to reimburse him for his business expenses, plaintiff resigned from his position at UP. Plaintiff gave thirty days notice of his resignation.

28.     At the time of his resignation, plaintiff was told by Ulanov that he would be paid the salary, bonuses and expense reimbursements he was owed.

29.     During the course of his employment at UP, plaintiff incurred business expenses for travel, lodging, cell phone, and other items. Plaintiff charged these expenses to his personal credit cards because UP did not provide Plaintiff with a corporate card. Ulanov told plaintiff he would be reimbursed for these expenses.

30.    Plaintiff submitted monthly accountings of the expenses for which he was entitled to be reimbursed.

31.    At the time plaintiff resigned his employment at UP, he was owed $23,093.41 in expense reimbursements.  None of these expenses have been reimbursed to date.

32.    Despite due demand by plaintiff, UP and Ulanov have refused to make payment of the wages, bonuses and expense reimbursements due and owing plaintiff.


<u>COUNT I</u>

33.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 32 .

34.    In failing to pay plaintiff the wages, bonuses and expenses which he was promised, defendants have breached their agreement with plaintiff.

35.    As a result of defendants' breach, plaintiff has suffered damage, including, without limitation, deprivation of wages, bonuses and expenses, in an amount exceeding $66,295.85 .

<u>COUNT II</u>

36.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 32.

37.    Defendants have failed to pay plaintiff wages and bonuses in the amount of $43,202.44.

38.    Defendants' failure to pay plaintiff is wilful and intentional.

39.    Defendants' failure to pay plaintiff wages and bonuses violates New York State Labor Law Section 198.

40.    As a result of defendants' willful refusal and failure to pay plaintiff his wages and bonuses, plaintiff is entitled, pursuant to New York Labor Law §198, to  his costs and attorneys'

fees in this action, expected to be in excess of $15,000, as well as 25% liquidated damages, amounting to $10,800.61.

41.    As a result of their violations of New York State Labor Law, defendants owe plaintiff at least $69,000.

COUNT III

42.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 32, above.

43.    Plaintiff rendered services on behalf of defendants for the period 2005 to 2006.

44.    Defendants accepted and benefitted from plaintiff's services, including plaintiff's use of personal assets to pay for defendants' expenses.

45.    Defendants have not adequately compensated plaintiff for the value of those services and expenses.

46.    As a result of defendants' aforesaid conduct, they have been unjustly enriched and plaintiff demands judgment against defendants in the amount of at least $66,295.85.

**WHEREFORE**, plaintiff respectfully requests that the Court:

(a) award plaintiff judgment on his claims, plus liquidated damages and interest;

(b) award plaintiff his costs and attorneys' fees incurred in this action; and

(c) grant plaintiff such other and further relief as the Court may deem just and reasonable.

JURY DEMAND

Plaintiff hereby demands trial by jury in this action.

Dated: May 12, 2008
       New York, New York

BANTLE & LEVY LLP

By: _Lee F. Bantle_
    Lee Bantle (LB- 7036)

817 Broadway
New York, New York 10003
Attorneys for Plaintiff