STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                              :

NELSON GONZALEZ,                        :
                              :

                  Plaintiff,     :
                              :

       – against –            :     08 Civ. 4467 (VM)
                              :

THE ULANOV PARTNERSHIP, INC.,   :
and NICHOLAS ULANOV,         :
                              :

                  Defendants.  :
                              :
------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

FRIEDMAN KAPLAN
  SEILER & ADELMAN LLP
1633 Broadway
New York, NY  10019-6708
(212) 833-1100

*Attorneys for Defendants*
*Nicholas A. Ulanov and The Ulanov Partnership Inc.*

July 25, 2008

629867.5

## TABLE OF CONTENTS

Page

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT ........................................1

PRELIMINARY STATEMENT ........................................................................................2

STATEMENT OF FACTS ................................................................................................3

ARGUMENT......................................................................................................................8

I. PLAINTIFF'S CLAIMS FOR ALLEGEDLY UNPAID SUMS
REMAINING ON BONUSES AWARDED MORE THAN SIX
YEARS AGO SHOULD BE DISMISSED BECAUSE THEY
ARE TIME-BARRED .......................................................................................................8

II. BECAUSE OF PLAINTIFF'S MATERIAL BREACH OF HIS
AGREEMENT WITH THE COMPANY, ALL OF HIS CLAIMS
FOR COMPENSATION FROM JANUARY 2003 UNTIL HIS
RESIGNATION SHOULD BE DISMISSED ..................................................................9

III. PLAINTIFF'S SECOND CAUSE OF ACTION UNDER THE
NEW YORK LABOR LAW SHOULD BE PARTIALLY
DISMISSED ....................................................................................................................10

     A.    Plaintiff's Labor Law Claim Should Be Dismissed
         To The Extent That It Seeks Recovery For Work He
         Performed During The "Part Time Arrangement".....................................10

     B.    Plaintiff's New York State Labor Law Claim
         Should Be Dismissed To The Extent It Seeks
         Recovery For Allegedly Unpaid Bonuses...................................................12

IV. PLAINTIFF'S THIRD CAUSE OF ACTION IN QUANTUM
MERUIT SHOULD BE DISMISSED.............................................................................13

V. PLAINTIFF'S CLAIMS FOR UNPAID SALARY SHOULD
BE PARTIALLY DISMISSED .......................................................................................15

VI. PLAINTIFF'S BREACH OF CONTRACT AND UNJUST
ENRICHMENT CLAIMS SHOULD BE DISMISSED TO THE
EXTENT THEY SEEK RECOVERY OF UNDOCUMENTED
EXPENSES......................................................................................................................15

VII. ALL CLAIMS AGAINST ULANOV SHOULD BE
DISMISSED ....................................................................................................................18

CONCLUSION.................................................................................................................19

TABLE OF AUTHORITIES

<u>CASES</u>

*Akgul v. Prime Time Transport, Inc.*,
    293 A.D.2d 631, 741 N.Y.S.2d 553 (2d Dep't 2002)..........................................................10

*Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*,
    448 F.3d 573 (2d Cir. 2006)..........................................................14

*Bhanti v. Brookhaven Memorial Hospital Medical Center, Inc.*,
    260 A.D.2d 334, 687 N.Y.S.2d 667 (2d Dep't 1999)..........................................................10

*Bynog v. Cipriani Group, Inc.*,
    1 N.Y.3d 193, 196, 770 N.Y.S.2d 692, 693 (2003)..........................................................10

*Carlson v. Katonah Capital, L.L.C.*,
    2006 WL 273548 (Sup. Ct. N.Y. County Jan. 27, 2006)..........................................................13

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388-89, 521 N.Y.S.2d
    653, 656 (1987)..........................................................14

*Gagen v. Kipany Productions, Ltd.*,
    27 A.D.3d 1042, 1043, 812 N.Y.S.2d 689, 691 (3d Dep't 2006)..........................................................10

*Kirsch v. Fleet Street, Ltd.*,
    148 F.3d 149 (2d Cir. 1998)..........................................................10

*MAG Portfolio Consultant v. Merlin Biomed Group*,
    268 F.3d 58 (2d Cir. 2001)..........................................................18

*Markby v. PaineWebber Inc.*,
    169 Misc. 2d 173 (Sup. Ct. N.Y. County 1996)..........................................................12

*Morris v. N.Y. State Department of Taxation and Finance*,
    82 N.Y.2d 135, 603 N.Y.S.2d 807 (1993)..........................................................18

*Spanierman Gallery, PSP v. Love*,
    2003 WL 22480055 (S.D.N.Y. Oct. 21, 2003)..........................................................15

*TNS Holdings, Inc. v. MKI Securities Corp.*,
    92 N.Y.2d 335, 680 N.Y.S.2d 891 (1998)..........................................................18

*Truelove v. Northeast Capital & Advisory, Inc.*,
    95 N.Y.2d 220, 715 N.Y.S.2d 366 (2000)..........................................................12, 13

*Yang v. Lehman Brothers, Inc.*,
    269 A.D.2d 160, 702 N.Y.S.2d 292 (1st Dep't 2000) .........................................17

## STATUTES

26 U.S.C. § 162 ..............................................................................................16

26 U.S.C. § 274(d) .........................................................................................16

N.Y. Lab. Law § 190(1) .................................................................................12

N.Y. Lab. Law § 193 .....................................................................................12

N.Y. Lab. Law § 198(3) ...................................................................................8

## MISCELLANEOUS

52 N.Y. Jur. 2d, *Employment Relations* § 245 (1996) ....................................9

STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                :

NELSON GONZALEZ,                     :

                   Plaintiff,      :

                                :

      – against –               :     08 Civ. 4467 (VM)

                                :

THE ULANOV PARTNERSHIP, INC.,   :
and NICHOLAS ULANOV,        :

                                :

                  Defendants.    :

                                :
-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Defendants Nicholas A. Ulanov ("Ulanov") and The Ulanov Partnership Inc. (the "Company") respectfully submit this memorandum in support of their motion to dismiss and for summary judgment on: (a) plaintiff's claim for sums allegedly remaining unpaid on a $20,000 bonus awarded on May 31, 2001 and a $12,500 bonus awarded on April 9, 2002; (b) plaintiff's claims for compensation from January 2003 until his resignation; (c) plaintiff's claims under the New York State Labor Law (the "Labor Law") to the extent they seek recovery in respect of the period during which plaintiff was an independent contractor for the Company, and to the extent they seek recovery of allegedly unpaid bonuses; (d) plaintiff's third cause of action for quantum meruit/unjust enrichment; (e) plaintiff's claim for allegedly unpaid salary for work performed while he was an employee of the Company to the extent he has, in fact, been paid; (f) plaintiff's claim seeking reimbursement for $23,093.41 in expenses allegedly incurred on behalf of the Company; and (g) all of plaintiff's claims against Ulanov.

## PRELIMINARY STATEMENT

In this action commenced on May 13, 2008, plaintiff, a former employee of the Company, seeks recovery for allegedly unpaid salary and bonuses, and for reimbursement of expenses that plaintiff allegedly incurred in the course of his employment. Plaintiff's claims are defective and should be dismissed.

Plaintiff's claim for a sum allegedly remaining unpaid on a $20,000 bonus awarded on May 31, 2001 (almost seven years before this action was commenced), is time-barred and should be dismissed. Similarly time-barred is plaintiff's claim for a sum allegedly remaining unpaid on a $12,500 bonus awarded on April 9, 2002 (six years and thirty-four days before this action was commenced).

Plaintiff's claim for any compensation after January 2003 also fails. Plaintiff procured from the Company the opportunity, beginning in January 2003, to leave full-time employment for a year (which ultimately stretched to 34 months) and go abroad in order to pursue a Ph.D., by promising the Company that upon his return he would work for at least 15 months, and also would give the Company 6 months' notice of his intention to resign. Plaintiff breached both of these promises. These substantial and material breaches by plaintiff disentitle him to any compensation after January 2003.

In addition, plaintiff's Labor Law claims should be dismissed to the extent that they seek recovery for work alleged to be performed when plaintiff was working part time for the Company while he was away on leave in Belgium pursuing a Ph.D. in Belgium. During this period, plaintiff was an independent contractor who was not covered by the Labor Law. Moreover, even if plaintiff was at all times a covered "employee" under the Labor Law, the

629867.5

2

bonuses that plaintiff seeks to recover are not recoverable as "wages" under the Labor Law because they were discretionary.

The claims asserted in the Third Cause of Action also should be dismissed. Plaintiff cannot recover in quasi contract for events arising out of a subject matter that plaintiff himself alleges is governed by a valid and enforceable contract.

Plaintiff's claim for unpaid salary should be dismissed to the extent it seeks recovery for $7,785.24 which was, in fact, paid to him.

The part of the breach of contract and quantum meruit claims seeking reimbursement for $23,093.41 in expenses allegedly incurred on behalf of the Company should be dismissed due to plaintiff's failure to submit to the Company appropriate documentation of those expenses.

Finally, all claims asserted against Ulanov (which are based solely on the alleged propriety of piercing the Company's corporate veil) should be dismissed. Plaintiff makes no allegations whatsoever to establish the necessary element that Ulanov's purported complete improper domination of the Company *occurred for the purpose of perpetrating a wrong against plaintiff.*

## STATEMENT OF FACTS [1]

The Company provides consulting services, in a wide variety of areas, to not-for-profit institutions. (R. 56.1 ¶ 6.) While providing services to large, well-known institutions (e.g., Oxford University), the Company has always been a relatively small operation, at any point

---

[1] Facts with a citation to "Compl." are taken from plaintiff's complaint, filed May 13, 2008, which is attached to the accompanying *Defendants' Statement of Material Facts Pursuant to Local Rule 56.1* as Exhibit A. Facts with a citation to "R. 56.1" are taken from the *Rule 56.1 Statement* which, in turn, cites Ulanov's accompanying declaration and its exhibits.

in time employing no more than four or five individuals.  (R. 56.1 ¶ 8.)  At present, the only

employees of the Company are Ulanov and his assistant.  (R. 56.1 ¶ 9.)

   The Company works with just a few clients at any given time, and payments from

clients come in at irregular intervals, most significantly after the Company has performed all of

the work on a given project.  (R. 56.1 ¶ 10.)  As a result, the Company's revenues go through

peaks and valleys, which has caused the Company to sometimes defer compensation.  (R. 56.1

¶ 11.)  Thus, like many operators of small businesses, Ulanov draws a salary only when the

Company can afford it.  (Ulanov Decl. ¶ 4)    Similarly, pursuant to Company policy, any

bonuses awarded to Company employees are paid only if and when the Company can afford to

pay them (and even then are forfeited, to the extent not already paid, once an employee leaves

the Company).  (R. 56.1 ¶ 14.)

   Plaintiff commenced employment with the Company on a full-time basis in 1997.

(Compl. ¶ 16.)  When plaintiff was first hired, Ulanov explained to him that he would be paid an

annual salary, and that if his performance demonstrated that he was likely to make continued,

valuable contributions to the Company, the Company might, at its discretion, award him a bonus.

(R. 56.1 ¶¶ 13, 15.)  Ulanov explained to plaintiff that even once a bonus has been awarded,

payment would be conditioned on: (a) the Company's financial ability to pay the bonus; and

(b) the recipient's continued employment with the Company. (R. 56.1 ¶¶ 14, 15.)

   Pursuant to the exercise of the Company's discretion, plaintiff received no bonus

in 1997, 1998, 1999, 2000, 2003, 2004, 2005 and 2006.  (R. 56.1 ¶ 16.)

   On May 31, 2001, the Company awarded plaintiff a $20,000 bonus (the "2001

Bonus").  (R. 56.1 ¶ 17.)  On April 9, 2002, the Company awarded plaintiff a $12,500 bonus (the

"2002 Bonus").  (R. 56.1 ¶ 18.)  The 2001 Bonus and the 2002 Bonus were discretionary, and at

the time they were awarded Ulanov reminded plaintiff of the conditions that would govern their potential payment. (R. 56.1 ¶ 19.)

The Company made bonus payments to plaintiff of $5,000 on July 25, 2001, $5,000 on August 20, 2001, $5,000 on May 2, 2002, and $1,800 on December 31, 2003. (R. 56.1 ¶ 20.)

Plaintiff worked full-time for the Company until January 2003, when he began working under what he describes as a "part-time arrangement." (Compl. ¶ 20, 22.)

In fact, during this "part-time arrangement," pursuant to an agreement with the Company, plaintiff pursued a Ph.D. through the London School of Economic and Political Science while he was a Fellow at Catholic University Leuven, Belgium. (R. 56.1 ¶ 22.) The agreement between the Company and plaintiff provided that plaintiff would be abroad pursuing his Ph.D. for a period of no less than six months and no longer than one year; during that time plaintiff would make himself available for part-time work for the Company equivalent to one day per week; after that period, plaintiff would return and work for the Company for at least 15 months; and plaintiff would give the Company at least 6 months notice should he decide to resign. (R. 56.1 ¶ 23.) Plaintiff set forth this agreement in an email to Ulanov, dated August 31, 2002:

> Dear Nicholas:
>
> I am extremely glad we were able to resolve the issue of my affiliation with the Firm during and after my time in Belgium, and I am grateful for your flexibility and generosity in allowing our conversation to come to a point of agreement.
>
> To summarize, I understand that I will remain a member of the Firm for the time I am away on my academic Fellowship (from around December 2002, for a minimum of six months and for up to a year), and I will be available to contribute to its work (presumably mainly the development of the RiWSA) for the

equivalent of a day per week.  I also understand that I will remain with the Firm for a minimum of 15 months after my return, and that should I decide not to continue with the Firm, I will give six months notice.

I am looking forward to continuing my involvement with our work while I am away and more fully upon my return, when I hope a (presumed) doctoral qualification will actually be of some use to us!

(R. 56.1 ¶ 24.)

During his stay in Belgium, the Company asked plaintiff to devote his promised part-time work to the development of the Royal Institution World Science Assembly, also known as "RiWSA" or "RiSci" ("RiSci"), a joint project of the Company and the Royal Institution of Great Britain.  (R. 56.1 ¶ 26.)  The board of RiSci, which was governed by the Royal Institution of Great Britain, gave plaintiff the title of director, and plaintiff received compensation from RiSci.  (R. 56.1 ¶¶ 27, 28.)  While he was abroad, plaintiff's working hours were not set by the Company, he was not on the Company's payroll, he did not receive any fringe benefits from the Company, and his income from the Company was recorded on an IRS Form 1099 (used for independent contractors) not a Form W-2 (used to report employees' wages).  (R. 56.1 ¶¶ 30, 38, 39, 40, 41, 42.)

Plaintiff did not finish his studies within the agreed-to period of one year.  (R. 56.1 ¶ 32.)  Instead, he made several requests to extend his stay abroad, in which the Company acquiesced in the hope that plaintiff would proceed to obtain the Ph.D., much benefiting both the plaintiff and the Company.  (R. 56.1 ¶¶ 32, 33.)  Ultimately, however, plaintiff did not obtain his Ph.D.  (R. 56.1 ¶ 34.)  In mid-November 2005 – some two years and ten months after commencing the part-time arrangement – plaintiff returned to the United States and resumed working on a full-time basis for the Company, with an agreed upon annual salary of $150,000.

(Compl. ¶ 25.) (R. 56.1 ¶ 35.)  Plaintiff's earnings during this period were reported on a Form W-2.  (R. 56.1 ¶¶ 42,43.)

On September 15, 2006, plaintiff submitted an expense reimbursement request for the period April to July 2006, totaling $20,774.68.  (R. 56.1 ¶ 46.)  Contrary to Company policy (R. 56.1 ¶ 44), and unlike expense reports previously submitted by plaintiff (R. 56.1 ¶ 45), this reimbursement request was wholly lacking in detail. (R. 56.1 ¶ 46.)

In October 2006 – just 11 months after his return, instead of the minimum of 15 months that plaintiff had promised the Company – plaintiff left his employment with the Company, and did so without providing the six months notice that he also had promised the Company.  (R. 56.1 ¶ 36.)(Compl. ¶ 27.)

On July 29, 2007, nine months after he resigned, plaintiff submitted an updated expense reimbursement request to the Company totaling $25,951.02.  (R. 56.1 ¶ 47.)  In it, plaintiff increased (without explanation) the amount he previously had requested for the period April to July 2006 by $586.54 (from an original $20,774.68 to a revised $21,361.22), and requested reimbursement for the period August to October 2006 of $4,589.80.  (R. 56.1 ¶ 47.)  This reimbursement request, like the previous one, was wholly lacking in detail.  (R. 56.1 ¶ 47.)  Though requested by the Company to do so, plaintiff has failed and refused to prove detail explaining and backup documenting the expenses claimed.  (R. 56.1 ¶ 48.)

On May 13, 2008, plaintiff commenced this lawsuit, asserting three causes of action:

The First Cause of Action is for breach of contract based on defendants' alleged failure to pay plaintiff wages and bonuses, as well as defendants' alleged failure to reimburse plaintiff for expenses.  (Compl. ¶¶ 1, 33-35.)

629867.5

7

The Second Cause of Action is brought under the New York State Labor Law for defendants' alleged failure to pay plaintiff wages and bonuses. (Compl. ¶¶ 1, 37-41.)

The Third Cause of Action is brought in quantum meruit for defendants' alleged failure to compensate plaintiff for work performed on behalf of defendants in 2005 and 2006, and defendants' alleged failure to reimburse plaintiff for expenses incurred during that time period. (Compl. ¶¶ 1, 42-46.)

Ulanov's personal liability is predicated solely on the alleged propriety of piercing the Company's corporate veil. (Compl. ¶ 9.)

Plaintiff seeks compensatory damages, interest, and (pursuant to the Labor Law) liquidated damages and attorneys' fees.

## ARGUMENT

### I.

### PLAINTIFF'S CLAIMS FOR ALLEGEDLY UNPAID SUMS REMAINING ON BONUSES AWARDED MORE THAN SIX YEARS AGO SHOULD BE DISMISSED BECAUSE THEY ARE TIME-BARRED

Plaintiff contends that he is entitled to allegedly unpaid sums remaining on the 2001 Bonus and the 2002 Bonus because defendants' alleged failure to pay constitutes a breach of contract and a violation of Article 6 of the New York State Labor Law. (Compl. ¶¶ 19, 23, 34, 39.) Plaintiff's claims on the 2001 and 2002 Bonuses are time-barred.

The statute of limitations for breach of contract is six years. N.Y. CPLR 213(2). And Section 198(3) of the Labor Law similarly provides that "an action to recover upon a liability imposed by this article must be commenced within six years." N.Y. Lab. Law § 198(3).

Accordingly, plaintiff's First and Second Causes of Action should be dismissed to the extent they seek recovery for sums allegedly remaining unpaid on the 2001 Bonus (awarded

almost seven years before this action was commenced) and the 2002 Bonus (awarded six years and thirty-four days before this action was commenced).

## II.

### BECAUSE OF PLAINTIFF'S MATERIAL BREACH OF HIS AGREEMENT WITH THE COMPANY, ALL OF HIS CLAIMS FOR COMPENSATION FROM JANUARY 2003 <u>UNTIL HIS RESIGNATION SHOULD BE DISMISSED</u>

An employee's suit for compensation, whether sounding in breach of contract or quantum meruit, fails where the employee has committed a substantial and material breach of the employment contract.  52 N.Y. JUR. 2D, *Employment Relations* § 245 (1996).

Here, plaintiff's claims for compensation from January 2003 (when he went on leave and began pursuing his Ph.D.) until his resignation fail due to his substantial and material breach of his agreement with the Company.

As is clear from plaintiff's email to Ulanov memorializing the agreement, in order to get the Company to go along with his request to pursue his Ph.D. in Belgium for a year (which ultimately turned into 34 months), and to receive steady pay in an agreed-upon amount for part-time work during that period, plaintiff in turn promised to work for the Company at least 15 months after his return, and to give the Company 6 months' notice of his resignation.

Although plaintiff extracted the benefit of this agreement for far more than the twelve months originally agreed to, he did not fulfill his end of the bargain.  He failed to work for 15 months after he returned, and he failed to give the Company 6 months notice.

Accordingly, plaintiff's claims for compensation from January 2003 until his resignation should be dismissed.

III.

**PLAINTIFF'S SECOND CAUSE OF ACTION UNDER
THE NEW YORK LABOR LAW SHOULD BE PARTIALLY DISMISSED**

A.     **Plaintiff's Labor Law Claim Should Be Dismissed
To The Extent That It Seeks Recovery For Work
He Performed During The "Part Time Arrangement"**

Plaintiff's Labor Law claim should be dismissed to the extent it seeks recovery for work performed between January 2003 and November 2005, while he was in Belgium pursuing a Ph.D. During this period, plaintiff was not an "employee" entitled to the protections of the Labor Law; he was as an independent contractor.

An independent contractor is not an "employee" covered by the relevant provisions of the Labor Law. *Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193, 196, 770 N.Y.S.2d 692, 693 (2003); *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 170 (2d Cir. 1998); *Akgul v. Prime Time Transp., Inc.*, 293 A.D.2d 631, 633, 741 N.Y.S.2d 553, 556 (2d Dep't 2002); *Bhanti v. Brookhaven Memorial Hosp. Medical Center, Inc.*, 260 A.D.2d 334, 335, 687 N.Y.S.2d 667, 669 (2d Dep't 1999). The question of whether a party is an "independent contractor" turns on "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results. Factors relevant to assessing control include whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Bynog*, 1 N.Y.3d at 198, 770 N.Y.S.2d at 695 (internal citations omitted). The manner in which the relationship was treated for income tax purposes also is a "significant consideration." *Gagen v. Kipany Productions, Ltd.*, 27 A.D.3d 1042, 1043, 812 N.Y.S.2d 689, 691 (3d Dep't 2006); *see also Bynog*, 1 N.Y.3d at 199 & 199 n.3, 770 N.Y.S.2d at 695 & 695 n.3 (noting that earnings of plaintiffs, held to be independent contractors, were reported on federal tax form 1099 which

629867.5

10

"reports to the Internal Revenue Service amounts paid as compensation to persons such as independent contractors when withholding tax is not applicable.").

Judged against these criteria, plaintiff certainly was an independent contractor from January 2003 through November 2005. At the beginning of this period, because his status as a Company employee had ended, plaintiff was paid for his accrued but unused vacation and holiday pay. (R. 56.1 ¶ 25.) While plaintiff was on leave from the Company, he worked at his own convenience, did not receive fringe benefits from the Company, was not on the Company's payroll, and did not perform services for the Company on a fixed schedule. (R. 56.1 ¶ 30.) Although plaintiff was compensated by the Company during this period, he performed work for and received a payment in the amount of $25,000 from RiSci. (R. 56.1 ¶ 28.) In addition, while the Company broadly tasked him with the development of RiSci, the Company did not micro-manage plaintiff's work, and plaintiff largely pursued RiSci's development on his own initiative. (R. 56.1 ¶ 31) Plaintiff's earnings from the Company during this period were reported on a Form 1099. (R. 56.1 ¶¶ 38, 39, 40, 41, 42.) And while he was on leave plaintiff himself acknowledged his status as an independent contractor. (R. 56.1 ¶ 29.)

Accordingly, because plaintiff was an independent contractor and not an "employee" covered by the Labor Law from January 2003 through November 2005, plaintiff's Labor Law claim should be dismissed to the extent it seeks recovery for (a) allegedly unpaid sums remaining on a bonus purportedly awarded in June 2003,[2] and (b) $12,500 in allegedly

---

[2] Plaintiff erroneously alleges that the 2002 Bonus was awarded in June 2003. (Compl. ¶ 23.) The 2002 Bonus actually was awarded on April 9, 2002 (R.56.1 ¶ 18) and, as discussed *supra* in Section I, plaintiff's claims in respect of that bonus are barred by the six-year statute of limitation. However, as discussed in the text above, even if plaintiff were right concerning the date of the second bonus, it would not be covered by the Labor Law because June 2003 was within the period during which plaintiff worked as an independent contractor.

unpaid salary for work performed by plaintiff from August to November 2005.  (*See* Compl.

¶ 23, 24, 39.)

**B.    Plaintiff's New York State Labor Law**
**Claim Should Be Dismissed To The Extent It**
**Seeks Recovery For Allegedly Unpaid Bonuses**

Irrespective of whether plaintiff at all times qualified as a covered "employee,"

his Labor Law claim should be dismissed to the extent it seeks recovery for allegedly unpaid

sums on the 2001 Bonus and the 2002 Bonus because they are not covered by the Labor Law.

The Labor Law provides statutory protection only for "wages."  *See Truelove v.*

*Northeast Capital & Advisory, Inc.*, 95 N.Y.2d 220, 223-24, 715 N.Y.S.2d 366, 367-68 (2000).[3]

The Labor Law defines "wages" in pertinent part as "the earnings of the employee for labor or

services rendered, regardless of whether the amount of earnings is determined on a time, piece,

commission or other basis."  N.Y. Lab. Law § 190(1).  A bonus does not constitute "wages"

where it is left to the discretion of the employer.  *See Truelove*, 95 N.Y.2d at 224; *Carlson v.*

*Katonah Capital, L.L.C.*, 2006 WL 273548, at *2 (Sup. Ct. N.Y. County Jan. 27, 2006); *Markby*

*v. PaineWebber Inc.*, 169 Misc. 2d 173, 179 (Sup. Ct. N.Y. County 1996) (bonus subject to

forfeiture if payable at discretion of employer).

Plaintiff has not alleged that the 2001 Bonus and the 2002 Bonus for which he

seeks recovery were non-discretionary, nor has he made any factual allegations which, if true,

would allow the Court to determine that the bonuses were non-discretionary.  In fact, the bonuses

were wholly discretionary, and were based on Ulanov's determination of whether plaintiff's

---

[3]  Plaintiff does not identify the substantive section of the Labor Law under which he asserts his
claim for non-payment of salary and bonuses.  But the only sections conceivably applicable here
deal solely with "wages."  *See, e.g.*, N.Y. Lab. Law § 193.  Other sections, dealing with
"commissions," for instance, have no relevance to this action.

performance demonstrated that he was likely to make continued, valuable contributions to the Company.  (R. 56.1 ¶ 13.)

Moreover, the fact that the bonuses were "awarded" to plaintiff does not transform them into "wages" under the Labor Law.   Even when a bonus is awarded in a specified amount, the bonus does not constitute "wages" when "payment" is "conditioned upon some occurrence or left to the discretion of the employer." *Carlson*, 2006 WL 273548, at *2. Hence, in *Carlson*, the court held that because the payment of awarded bonuses was conditioned on continued employment, and because the plaintiffs voluntarily terminated their employment prior to payment of their awarded bonuses, their bonuses did not constitute "wages." *Id.* at *3. *See also Truelove*, 95 N.Y.2d at 225, 715 N.Y.S.2d at 368-69 (rejecting the plaintiff's argument that he had a right under the New York Labor Law to payments on an awarded bonus because "the bonus plan explicitly predicated the continuation of bonus payments upon the recipient's continued employment status.")  Accordingly, because payment of the 2001 Bonus and 2002 Bonus was conditioned on: (a) the Company's financial ability to pay; and (b) plaintiff's continued employment with the Company, the 2001 Bonus and 2002 Bonus do not constitute "wages."

Accordingly, plaintiff's Labor Law claim should be dismissed to the extent it seeks recovery for unpaid sums allegedly remaining on the 2001 Bonus and the 2002 Bonus.

## IV.

## PLAINTIFF'S THIRD CAUSE OF ACTION
## IN QUANTUM MERUIT SHOULD BE DISMISSED

Plaintiff's Third Cause of Action for "quantum meruit" or "unjust enrichment" (*see* Compl. ¶¶ 1, 46) should be dismissed because it is precluded by the contractual agreements alleged in the complaint.

629867.5

13

"'The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment . . . . Briefly stated, a quasi-contractual obligation is one imposed by law *where there has been no agreement or expression of assent, by word or act, on the part of either party involved* . . . .'" *Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (affirming dismissal of unjust enrichment claim) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388-89, 521 N.Y.S.2d 653, 656 (1987)).

Here, the sums for which plaintiff seeks recovery in his breach of contract claim are the same as those for which he seeks recovery in quantum meruit/unjust enrichment. Thus, in the First Cause of Action plaintiff asserts that defendants' failure to pay him $12,500 in salary owed for work performed in 2005, $15,002.44 in salary owed for work performed after returning to work full time, and $23,093.41 in expense reimbursements constitutes a breach of contract. (Compl. ¶ 34.) According to plaintiff, the $12,500 in salary is owed to him pursuant to an express agreement between him and Ulanov that while plaintiff was pursuing his Ph.D. he "would be compensated in the amount of 25% of his original salary." (Compl. ¶ 21.) Plaintiff also alleges that the $15,002.04 in salary is owed to him based on "an agreed-upon annual salary of $150,000." (Compl. ¶ 25.) And, plaintiff asserts that defendants alleged failure to reimburse $23,093.41 in expenses constitutes a breach of contract. (Compl. ¶ 29, 31). But in the Third Cause of Action these identical sums are sought in quantum meruit/unjust enrichment. (Compl. ¶ 43.)

Accordingly, plaintiff's Third Cause of Action should be dismissed. *See Spanierman Gallery, PSP v. Love*, 2003 WL 22480055 (S.D.N.Y. Oct. 21, 2003) (Marerro, J.) (dismissing with prejudice unjust enrichment claim as duplicative of breach of contract claim).

## V.

### PLAINTIFF'S CLAIMS FOR UNPAID SALARY SHOULD BE PARTIALLY DISMISSED

Plaintiff claims that defendants allegedly failed to pay him $15,002.44 in salary after he returned to full-time employment in November 2005. (Compl. ¶¶ 25, 26.) However, plaintiff was paid all salary owed to him during his time as a full-time employee beginning in November 2005 through to his resignation, except arguably $7,217.20 constituting his salary for the period December 16, 2005 through January 15, 2006. (R. 56.1 ¶ 49, 50.)

Accordingly, plaintiff's First, Second, and Third Causes of Action should be dismissed to the extent they seek recovery in the post-independent contractor period for more than $7,217.20.[4]

## VI.

### PLAINTIFF'S BREACH OF CONTRACT AND UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED TO THE EXTENT THEY SEEK RECOVERY OF UNDOCUMENTED EXPENSES

Plaintiff's First Cause of Action for breach of contract, and Third Cause of Action in quantum meruit, should be dismissed to the extent they seek recovery for expenses he

---

[4] As discussed *supra* in Section II, defendants are not liable for the remaining $7,217.20 because of, *inter alia*, plaintiff's material breach of contract from his failure to fulfill his commitment to work at least 15 months after his return from leave, and his failure to give 6 months advance notice of his resignation. Not only did plaintiff's material breach of these obligations excuse all of the Company's contractual commitments to him, it will form the basis of a counterclaim seeking the return of the $223,675 the Company paid to plaintiff after he went on leave. The Company also will be asserting counterclaims for, *inter alia*, unfair trade practices (based on plaintiff's theft of a client and misappropriation of confidential and proprietary information), breach of fiduciary duty, overpayment of expenses, and conversion of a laptop computer and software.

allegedly incurred on behalf of the Company, due to plaintiff's failure to explain and document these expenses.

The Internal Revenue Code requires that expenses claimed as business deductions be properly substantiated. For example, 26 U.S.C. § 162 establishes deductions for traveling expenses, meals, and lodging, and 26 U.S.C. § 274(d) provides that

> no deduction or credits shall be allowed . . . under section 162 . . . for any traveling expense (including meals and lodging while away from home) [or] for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity . . . unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility or property, or receiving the gift.

Not surprisingly, it is the Company's policy that its employee's requests for reimbursement of business expenses must be supported with detail and, if requested, backup documentation such as receipts, so the Company can comply with Section 274 and other applicable tax laws and regulations. (R. 56.1 ¶ 44.)

Plaintiff understood and complied with this policy. For example, in his expense reimbursement requests for January and February 2006 (R. 56.1 ¶ 45), plaintiff separately identified every single individual item for which he was seeking reimbursement, its amount, date, nature, and the place where the expense was incurred.

On September 15, 2006, however, shortly before his resignation, plaintiff submitted an expense reimbursement request for the period April to July 2006, totaling $20,774.68. (R. 56.1 ¶ 46.) Contrary to Company policy, and unlike expense reimbursement

requests previously submitted by plaintiff, this request was wholly lacking in detail. It stated in pertinent part as follows ("UP" stands for Company-related expenses; "WST" stands for expenses related to a particular Company client):

| Apr-06 | |
|---|---|
| UP | $869.16 |
| WST | $4,422.19 |
| | |
| **May-06** | |
| UP | $707.16 |
| WST | $4,045.38 |
| | |
| **Jun-06** | |
| UP | $761.03 |
| WST | $4,592.91 |
| | |
| **Jul-06** | |
| UP | $789.97 |
| WST | $4,486.88 |
| | |
| **$20,774.68** | |

On July 29, 2007, eight months after he resigned, plaintiff submitted an updated expense reimbursement request to the Company totaling $25,951.02. (R. 56.1 ¶ 47.) In it, plaintiff increased (without explanation) the amount he previously had requested for the period April to July 2006 by $586.54 (from an original $20,774.68 to a revised $21,361.22), and requested reimbursement for expenses allegedly incurred in the period August to October 2006 of $4,589.80. (R. 56.1 ¶ 47.) This reimbursement request also was in the same format as set forth above, and was equally bereft of detail.

Though requested by the Company to do so, plaintiff has failed and refused to provide detail explaining and backup documenting the $25,951.02 of expenses he has claimed. (R. 56.1 ¶ 48.) Because plaintiff has failed to fulfill this wholly reasonable condition precedent, his claims relating to expenses should be dismissed. *See Yang v. Lehman Bros., Inc.*, 269 A.D.2d

160, 160, 702 N.Y.S.2d 292, 293 (1st Dep't 2000) (affirming dismissal of claim for expenses due to plaintiff's failure to comply with company-required procedures).

## VII.

## ALL CLAIMS AGAINST ULANOV SHOULD BE DISMISSED

Plaintiff's sole ground that Ulanov should be liable for all the claims alleged in the complaint is the alleged propriety of piercing the Corporation's corporate veil. (Compl. ¶ 9.) However, those seeking to pierce the corporate veil "bear a heaving burden of showing that the corporation was dominated as to the transaction attacked *and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences*." *TNS Holdings, Inc. v. MKI Securities Corp.*, 92 N.Y.2d 335, 339, 680 N.Y.S.2d 891, 893 (1998) (emphasis added); *see also Morris v. N.Y. State Dep't of Taxation and Finance*, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810-11 (1993) (same).

Even if it were true (which defendants deny) that Ulanov exercised "complete domination" of the Company in a manner inconsistent with the proper functioning of a small corporation, plaintiff has made no allegations of fact showing that Ulanov, "through [his] domination, abused the privilege of doing business in the corporate form *to perpetrate a wrong or injustice against [plaintiff] such that a court in equity will intervene*." *Morris*, 82 N.Y.2d at 142, 603 N.Y.S. 2d at 811 (emphasis added). In order to satisfy this requirement, plaintiff must show that Ulanov's purported domination occurred "*for the purpose of committing a wrong*." *MAG Portfolio Consultant v. Merlin Biomed Group*, 268 F.3d 58, 64 (2d Cir. 2001) (emphasis added). *See also Sahu v. Union Carbide Corp.*, 2006 WL 3377577, at *9 (S.D.N.Y. Nov. 20, 2006).

629867.5

Nowhere in the complaint, however, does plaintiff allege that Ulanov's purported domination of the Company occurred for the purpose of committing a wrong against plaintiff. Rather, plaintiff merely asserts that "Ulanov exercised such control over [the Company] that [the Company] was a mere instrumentality of Ulanov thus allowing the corporate veil to be pierced." (Compl. ¶ 9.) Because plaintiff's allegations, even if true, would be insufficient to warrant piercing the corporate veil, all claims against Ulanov should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant defendants' motion and dismiss and/or grant defendants summary judgment on: (a) plaintiff's claim for sums allegedly remaining unpaid on a $20,000 bonus awarded on May 31, 2001 and a $12,500 bonus awarded on April 9, 2002; (b) plaintiff's claims for compensation from January 2003 until his resignation; (c) plaintiff's New York State Labor Law Claims to the extent they seek recovery in respect of the period during which plaintiff was an independent contractor for the Company, and to the extent they seek recovery of allegedly unpaid bonuses; (d) plaintiff's third cause of action for quantum meruit/unjust enrichment; (e) plaintiff's claim for allegedly unpaid salary for work performed while he was an employee of the Company to the extent he has, in fact, been paid;

(f) plaintiff's claim seeking reimbursement for $23,093.41 in expenses allegedly incurred on

behalf of the Company; and (g) all of plaintiff's claims against Ulanov.

Dated:   New York, New York
         July 25, 2008


                              Respectfully submitted,

                              FRIEDMAN KAPLAN
                              SEILER & ADELMAN LLP

                              _____
                              Lance J. Gotko
                              lgotko@fklaw.com
                              1633 Broadway
                              New York, New York 10019
                              (212) 833-1100

                              *Attorneys for Defendants*
                              *Nicholas Ulanov and The Ulanov Partnership Inc.*

629867.5                            20

(f) plaintiff's claim seeking reimbursement for $23,093.41 in expenses allegedly incurred on

behalf of the Company; and (g) all of plaintiff's claims against Ulanov.

Dated:   New York, New York
         July 25, 2008

                              Respectfully submitted,

                              FRIEDMAN KAPLAN
                              SEILER & ADELMAN LLP

                              Lance J. Gotko
                              lgotko@fklaw.com
                              1633 Broadway
                              New York, New York 10019
                              (212) 833-1100

                              *Attorneys for Defendants*
                              *Nicholas A. Ulanov and The Ulanov Partnership Inc.*